The Law Offices of Jacob Aronauer
225 Broadway, 3rd Floor
New York, New York 10007
(212) 323-6980
jaronauer@aronauerlaw.com

April 6, 2020

**VIA ECF**
Magistrate Judge Arlene R. Lindsay
United States District Court
Eastern District of New York
814 Federal Plaza
Central Islip, New York 11722

       **Re:**    *Jordan v. JVR Car Wash Inc., et al.*
              *Case No. 18-cv-2430 (SJF)(ARL)*

Dear Magistrate Judge Lindsay:

This letter is respectfully submitted on behalf of Plaintiff to enforce the term sheet signed by the parties. On January 31, 2020, the parties entered into a term sheet. The parties, though, were unable to agree on the language of the settlement agreement. A copy of the term sheet is annexed as Exhibit A.

Plaintiff requests approval of the settlement, per the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), as Plaintiff's claims arise under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiff's proposed agreement is annexed as Exhibit B.

The terms of the settlement are as follows. Defendants will pay a total of $55,000 before interest. Each month, Defendants will pay $1,000 with 8% interest pursuant to the amortization schedule which is annexed as schedule "A" to the settlement agreement. As discussed below, though, Defendants will have the opportunity to make a lump sum payment of $50,000.00 minus any prior installment payments.

As a means of security, the individual Defendants both personally and on behalf of the corporate defendant signed affidavit of confession of judgments for 1.5 the settlement amount minus any prior payments made by Defendants.

Pursuant to the terms of the settlement agreement, if Defendants elect to make monthly payments, Plaintiff's counsel will retain $17,669.84 in fees and $1,990.48 in expenses. If Defendants pay in one lump, Plaintiff's counsel will retain $16,003.17 in fees and $1,990.48 in expenses.

As a general matter, a district court may enforce, on a motion, a settlement agreement reached in a case that was pending before it. *Palmer v. County of Nassau*, 977 F. Supp.2d 161, 166 (E.D.N.Y 2013). In addition, "settlement agreements to end litigation are strongly favored by courts and are not lightly to be cast aside. *Willgerodt, on Behalf of Majority of Majority Peoples' Fund for 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997). This applies to term sheets.

The fact that the parties contemplated a second more formal document is not grounds for the court not enforcing the settlement agreement.

A preliminary agreement is binding, despite the desire for a later formal document, 'when the [P]arties have reached complete agreement {including the agreement to be bound) on all issues perceived to require negotiation. Such an agreement is preliminary only in form only in the sense that the Parties desire a more elaborate formalization of the agreement. The second stage is not necessary; it is merely considered desirable." (emphasis added).

*Hostcentric Technologies, Inc., v. Republic Thunderbolt, LLC*, 2005 U.S. Dist. LEXIS 1130, at * 5 (S.D.N.Y. June 9, 2005).

The grounds for enforcing the term sheet are clearly established. The term sheet does not state that it is an interim and non-binding agreement. *Suarez v. SCF Cedar, LLC*, 2016 U.S. Dist. LEXIS 24064, at * 4 (S.D.N.Y. Mar. 14, 2016). The term sheet lists the monetary terms. Id. The term sheets also contains a provision which states that the parties were to provide a more formalized agreement. Id. In short, the facts of this case are analogous to *Surarez* where the Court found that the term sheet was a binding agreement.

Also, similar to *Surarez*, Plaintiff is forced to seek the intervention of the Court to finalize the settlement due to the difficulties with opposing counsel. As noted earlier, due to Defendants' failure to respond to Plaintiff's proposed edits, an extension was required (dkt 096). Now, Defendants refuse to work with Plaintiffs in good faith. Since Plaintiffs earlier letter, Mr. Kataev has refused to meet and confer with respect to the settlement agreement over the phone. Mr. Kataev's e-mail to Plaintiff's counsel refusing to meet and confer is annexed as Exhibit C. And once again, Mr. Kataev has threatened sanctions. Annexed as Exhibit D is Mr. Kataev's most recent threat of sanctions. And Mr. Milman, who is Mr. Kataev's supervisor at Defendants' law firm and is listed as an attorney on record, refuses to respond to Plaintiff's counsel. Annexed as Exhibit E are e-mails from this office to Mr. Milman that went unanswered.

Plaintiff is mindful of the fact that the Court—more than ever—is under tremendous time pressure. Unfortunately, though, as the above reflects, this motion was necessary. Plaintiff informed Defendants that if they were not able to agree to the settlement terms by close of business April 2, 2020, we would be forced to make this application. As noted earlier, Defendants' response was to once again threaten sanctions.

2

Magistrate Judge Arlene R. Lindsay
April 6, 2020
Page 3

### *Claims and Defenses*

It is submitted that there are a number of factual and legal disputes between the parties which could ultimately impact Plaintiff's ability to prevail if this case would have proceeded to dispositive motion practice or to trial.

Plaintiff commenced this action seeking unpaid wages pursuant to the FLSA and NYLL, as well as damages for alleged wage notice and wage statement violations. Plaintiff alleges that he worked at Defendants from approximately 2009 until March 2018. Plaintiff further alleges that he worked between 4, 5, or 6 days a week at varying times during his employment with Defendants. Plaintiff alleges that Defendants failed to pay him the required minimum and overtime wage rates for all hours worked, retained his gratuities, and failed to supply Plaintiff with the notices required under NYLL.

One of the pivotal issues in this case was whether, under the NYLL Wage Theft Prevention Act, Defendants sufficiently informed Plaintiff that Defendants were imposing the tip credit reduction against Plaintiff's hourly salary. Defendants maintain that they complied with this statute while Plaintiff argued that Defendants failed to properly inform him and therefore Defendants could not apply the tip credit to his wages.

Defendants deny any wrongdoing and liability.

Defendants also deny the willfulness of any alleged violations under the FLSA and NYLL. *See Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir. 1983) ("Employers willfully violate FLSA when (1) they know that their business is subject to FLSA and (2) their practices do not conform to FLSA requirements."). Defendants would seek to prove that they paid Plaintiff for all work performed, that the method(s) of payment were understood and agreed upon by the parties, and all payment practices were in good faith and with the belief that they were not in violation of the FLSA, NYLL, or other associated guidelines. Plaintiff, on the other hand, would seek to prove that any alleged violations were willful and that any purported intention to comply with the wage & hour laws was not done pursuant to the letter or spirit of the FLSA and NYLL.

Finally, Defendants represent they could not withstand a greater financial exposure than the compromise proposed here. Defendants' counsel discussed with Plaintiff's the amount of income Defendants received and their ability to withstand a large judgment. Consistent with Defendants financial issues, Defendants can only pay approximately $1,0000 a month. Defendants have told Plaintiff that if they are able to pay the lump sum of $50,000 it will only be if they are able to achieve a loan.

In light of the foregoing disputes and the risks associated therewith, the parties agreed to settle the case to avoid further litigation, motion practice, and trial.

### *The Settlement Terms*

If Defendants pay the settlement over 55 months, the parties have agreed to the payments listed below:

3

Magistrate Judge Arlene R. Lindsay
April 6, 2020
Page 4

- Plaintiff:                                                  $35,339.68
- Attorneys' fees and expenses:      $19,660.32

If Defendants pay the settlement in one lump within the defined time period, the parties have agreed to the payments listed below:

- Plaintiff:                                                  $32,006.35
- Attorneys' fees and expenses:      $17,993.65

Plaintiff requests that all payments be made to Plaintiff half by 1099 and half by W-2. Plaintiff sought liquidated damages for his unpaid wages—thus validating his position to be paid half 1099. As the Court is aware, in FLSA cases it is standard practice for the parties to divide payment to the plaintiff(s) half 1099 and half W-2. As set forth in the proposed settlement agreement, Plaintiff agrees to indemnify Defendants for any tax related issues.

The parties believe this settlement to be a fair resolution to this litigation, due to the aforementioned disputes about the value of Plaintiff's claims.

Plaintiff's counsels expenses are as follows:

**Filing Fee:** $400
**Service on Defendants:** $165
**Jacob Aronauer** round trip train ride from Penn Station to Syosset Station for deposition of individual Defendant: $28.00[1]
**Katheryn Filgate** train ride from Penn Station to Great Neck Station to Plaintiff's deposition: $12.50.
**Katheryn Filgate:** Lyft from Long Island to subway station: $19.13
**Katheryn Filgate:** Subway ride: $2.75.
**Veritext invoice** deposition of James Bianchi: $1,088.10
**Veritext invoice** deposition "bust" of Victor Bianchi: $275.00.

### *The Settlement Should be Approved*

The standard for approval of FLSA settlement is well-established in the Second Circuit. As stated by the Court in *Serebryakov v. Golden Touch Transp. of NY. Inc.*, No. 12-3990 (NGG)(RER), 2013 WL 3364393, at *2 (E.D.N.Y. 2013), "[i]n the absence of a certified class, a district court typically considers the following factors to determine whether a settlement of individual FLSA claims is reasonable: (1) the complexity, expense, and likely duration of litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to

---

[1] Jacob Aronauer took a car service to the deposition of the individual Defendant and the train back to New York City. This office, though, will only seek reimbursement for the cost of the train rides. Katheryn Filgate likewise took a car service to the deposition of Jordan but is not seeking reimbursement for the car service from Manhattan to Syosset.

Magistrate Judge Arlene R. Lindsay
April 6, 2020
Page 5

withstand a larger judgment; and (6) the range of reasonableness in light of the best possible recovery and all the risks of litigation." *Id.* at *2 (citations omitted). *See also Diaz v. Scores Holding Co.*, No. 07-8718 (THK), 2011 WL 6399468, at *2 (S.D.N.Y. 2011) ("Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bonafide* disputes...Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, courts will approve the settlement")(citations omitted).

Based on the *bona fide* disputes as to the value and viability of Plaintiff's claims, as well as the inherent risks of trial, the parties respectfully submit that the Settlement Agreement represents a fair and reasonable settlement of Plaintiff's claims in this action.

As set forth above, Defendants contend that Plaintiff is not owed any unpaid wages or other amounts. However, Defendants realize that there is the potential risk for significant expenses and liability if this case is not settled.   While Plaintiff believes he would prevail on his claims, he acknowledges that he faces significant risk in establishing liability and damages should this case proceed. Plaintiff is cognizant of the risks and uncertainty of protracted litigation, motion practice, potential appeals, and other factors that might affect his ability to recover on any of the claims asserted in this action, including the Defendants' inability to withstand a larger judgment, given their financial situation.

It is respectfully submitted that approval of this settlement is warranted because it is the product of arms-length negotiations between parties represented by knowledgeable and experienced counsel who focus their respective practices on wage and hour litigation. *Wolinsky v. Scholastic, Inc.*, 900 F.Supp.2d 322 (S.D.N.Y. 2012). Throughout the course of those negotiations, the parties shared their respective views on the validity and potential value of the claims, and ultimately reached a deal that both sides felt, given the risks associated with protracted litigation, was a fair compromise.  Indeed, after several rounds of negotiation between counsel, including the exchange of documentary evidence, the parties arrived at a settlement amount of $55,000.00 to resolve all claims, including attorney's fees. Settlement at this stage of the case for this amount unquestionably constitutes the most efficient and effective conclusion to this litigation for all parties.

The settlement agreement submitted for approval is in line with the mandates of *Cheeks*. The Agreement does not contain a confidentiality provision,  a release of NYLL and FLSA claims up to the date of the signing of the Agreement and Plaintiffs' attorneys' fees will be 33.33% of the total settlement after expenses.

Courts in the Second Circuit typically approve attorneys' fees in the range of thirty to thirty-three and one-third percent in FLSA cases. *See Santos v. El Tepeyac Butcher Shop, Inc.*, 2015WL 9077172, at *4 (S.D.N.Y. Dec. 15, 2015); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at * 3 (S.D.N.Y. March 20, 2014). Courts in this circuit have also held that the one-third contingency fee satisfies the broad remedial purpose of the FLSA and NYLL. *See Khait v. Whirlpool Corp.*, No. 06–6381 (ALC), 2010 WL 2025106 (E.D.N.Y. 2010).

Magistrate Judge Arlene R. Lindsay
April 6, 2020
Page 6

To this end, Plaintiff's counsel represents clients (the present plaintiff included) on a contingency-fee basis, calculated during this case at 33.33% percent after expenses This was the rate agreed upon by Plaintiff and counsel at the outset via a retainer agreement. To date, Plaintiffs' counsel bore all costs of litigation without compensation of any kind as his fee has been wholly contingent upon the result achieved. It is submitted that attorneys' fees are fair and reasonable.

### *Conclusion*

In light of the foregoing, Plaintiff respectfully submits that the proposed settlement amount is fair and reasonable, and further, that the terms of the settlement agreement comport with the requirements under the FLSA and NYLL. Plaintiff respectfully request that the Court approve the settlement.

We thank the Court for its time and consideration.

**Respectfully submitted,**

**THE LAW OFFICES OF JACOB ARONAUER.**

Jacob Aronauer

Enclosure

cc:     **All Counsel (via ECF)**

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ELIAS DE JESUS JORDAN, on behalf of himself and
others similarly situated,

        **Plaintiff,**

   -against-

JVR CAR WASH, INC. d/b/a GLEN COVE CAR
WASH, JAMES BIANCHI, VICTOR DOE (LAST
NAME UNKNOWN) and RICHARD CAMPBELL,
individually,

        **Defendants.**

-------------------------------------------------------------------X

Case No.: 2:18-cv-2430 (SJF) (ARL)

**SETTLEMENT TERM SHEET**

The parties hereby agree to settle this case on the following terms:

1) This is an agreement to agree, based on a fully drafted and executed settlement agreement and release in accordance with the Cheeks factors, which will be subject to and conditioned upon Court approval.

2) The Defendants make no admission of liability.

3) The Plaintiff shall receive from the Defendants, in full and final settlement of the claims raised in this case (together with attorneys' fees and costs), the amount of $55,000.00 payable at $1,000.00 per month until paid in full together with annual interest of eight percent (8%) running from March 1, 2020 provided the Court approves the settlement, payable together with each monthly principal payment, on the condition that the Defendants have the option – for eight (8) months following settlement approval – to make a lump sum payment totaling $50,000.00 less all monies already paid for the life of this settlement. If such payment is made, all such additional principal and interest obligations shall be waived and released. A payment-and-interest amortization schedule will be provided with the settlement agreement.

4) Subject to a notice and cure period of ten (10) days (to be further detailed in a fully executed settlement agreement and release), Plaintiff reserves the right to accelerate the full remaining balance due plus 150% liquidated damages of the outstanding balance on the settlement due (by way of example only, if $30,000 is still owed when Defendants fail to cure, they would owe $45,000). The Defendants are only entitled to five (5) notice and cure periods over the course of this settlement agreement. Should the Defendants default a sixth time, there will be no further notice and cure periods, and the outstanding balance due shall be accelerated. The same foregoing provisions apply in this event, as well.

5) Defendants, both individually and on behalf of the corporation, shall provide confessions of judgment to secure the payment obligation referenced herein.

6) Defendants shall draft the settlement agreement and Plaintiff shall draft the parties' joint motion for settlement approval to be exchanged with each other in submission of same.

Dated: 1/31/2020

_____
Plaintiff
By his attorneys, as attorney-in-fact

1/31/2020

_____
Defendants
By their attorneys, as attorneys-in-fact

# EXHIBIT B

## SETTLEMENT AGREEMENT AND RELEASE

This is a Settlement Agreement and Release ("Agreement") between JVR Car Wash, Inc. (hereinafter "JVR" or the "Corporate Defendant"), James Bianchi (hereinafter "James"), and Victor Doe a/k/a Victor Bianchi (hereinafter "Victor") (James and Victor hereinafter the "Individual Defendants"), and the Corporate Defendant's parents, subsidiaries, affiliates, successors, assigns, divisions, past and present officers, owners, shareholders, directors, principals, employees, former employees, representatives, service providers, counsel, and/or agents (whether in their personal or official capacity), and each of their respective successors and assigns, on the one hand (collectively, the "Defendants"), and Elias de Jesus Jordan Carias (hereinafter "Plaintiff" or "Jordan"), on the other hand. The Defendants and Jordan may each be referred to as a "Party," or together, be referred to herein as the "Parties." This Agreement is effective as of the date on which it is executed by all Parties (the "Effective Date").

**WHEREAS,** Plaintiff has commenced an action against Defendants in the United States District Court for the Eastern District of New York (hereinafter the "Court") styled as <u>Elias de Jesus Jordan v. JVR Car Wash, Inc., et al.,</u> Case No.: 2:18-cv-2430 (SJF) (ARL), alleging wage and hour violations under the Fair Labor Standards Act (hereinafter "FLSA") and the New York Labor Law (hereinafter "NYLL").

**WHEREAS,** Defendants deny that they failed to properly pay Plaintiff; and

**WHEREAS,** the parties entered into a term sheet annexed as Exhibit A;

**WHEREAS,** the Defendants and Jordan desire to fully and finally resolve all differences between them on the terms and conditions hereinafter set forth;

**NOW THEREFORE,** in consideration of the mutual promises of the Parties, the receipt and sufficiency of which the Parties hereby acknowledge, having been represented by counsel and the Parties intending to be bound, do hereby agree as follows:

1.    **Non-Admission.** This Agreement is entered into mutually in order to avoid the costs, uncertainty, and vexation of litigation. The terms set out in this Agreement are a compromise settlement of disputed claims, the validity, existence or occurrence of which is expressly disputed by the Parties. This Agreement shall not be admissible evidence in any judicial, administrative, or other legal proceedings for any reason except to enforce the terms of this Agreement.

2.    **Consideration.**

    a.    The Parties are in agreement that Plaintiff's counsel expended $1,990.48 in expenses and this amount is approved among the parties.

    b.    In consideration for Jordan's execution, compliance with, and non-revocation of this Agreement, the Defendants agree to pay Jordan the gross amount of Fifty Five Thousand Dollars and 00/100 Cents ($55,000.00) ("Settlement Payment), subject to the payment plan and/or discount for a lump sum payment as set forth below, as well as payroll deductions for taxes for the W-2 Check (as hereinafter defined), and of which a total amount of $19,660.32 will be apportioned to attorneys' fees and costs ("Fee Payment") and the total amount of $35,339.68 will be apportioned to Jordan ("Jordan Payment").

c.  Each monthly payment shall be payable with eight percent (8%) interest pursuant to the amortization schedule annexed hereto as **Schedule "A." The interest begins to accrue on March 1, 2020 pursuant to the term sheet.**

d.  The Settlement Payment shall be made in fifty-five (55) equal installments of $1,197.80 per month (equivalent to $1,000.00 per month plus interest as calculated in Schedule A) until paid in full, beginning on March 1, 2020, with three (3) checks each month on the first of the month (e.g., April 1st, May 1st, etc.) as follows: (i) the first check (the "W-2 Check") will be payable to Elias de Jesus Jordan in the gross amount of $384.81 with applicable withholdings;  the second check (the "1099 check") will be payable to Elias de Jesus Jordan via 1099 in the gross amount of $384.82 (the 1099 check with the W-2 check comprise the Jordan Payment); the Fee Payment and the third check will be made payable to The Law Offices of Jacob Aronauer (hereinafter "Plaintiff's counsel") via 1099 in the gross amount of $428.17 (the "Fee Payment").  Except as may otherwise set forth in this Agreement, all checks will be delivered to Jordan's counsel at The Law Office of Jacob Aronauer, 225 Broadway, 3rd Floor, New York, NY 10007.

e.  Each monthly payment of $1,000.00 plus interest made *prior* to approval shall be made by a single check and deposited in Defendants' counsel's escrow account, which will be held by Defendants' counsel until such time as this Agreement is approved by the Court pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).  Within fourteen (14) days of receipt an Order approving this Agreement as fair and reasonable consistent with Cheeks, Defendants' counsel shall issue one (1) check for the Fee Payment and two checks for the Jordan Payments held in escrow to Plaintiff's counsel; any money withheld for tax purposes in the W-2 check shall be returned to the Corporate Defendant for remittance to the federal and/or state taxing authorities as required by law.

f.  Each monthly payment made *after* approval will be sent pursuant to ¶ 2(d), *supra*.

g.  Notwithstanding anything contrary in this Agreement, for a period of eight (8) months after this Court approves this Agreement, the Defendants reserve the right to make a lump sum payment equal to Fifty Thousand and 00/100 ($50,000.00) less all principal and interest paid to date consistent with the terms set forth in the parties' executed Settlement Term Sheet annexed hereto as **Schedule "B."**  In the event the Defendants make this election, notice shall be sent to Plaintiff's counsel regarding same together with the three checks in an amount consistent with this provision and a calculation of how the payment was derived.

h.  Jordan's counsel must submit executed IRS Form W-9s with a Taxpayer Identification Number in order to receive the Settlement Payment, a copy of which may be submitted electronically together with Plaintiff's executed counterpart of this Agreement.

i.  Jordan agrees and affirms that the Settlement Payment shall constitute the entire amount of monetary consideration, inclusive of attorneys' fees and costs, provided to him under this Agreement and that Jordan will not seek any further compensation for any other claimed unpaid wages, wage supplements, injuries, damages, costs, or

disbursements, in connection with any of the matters encompassed in this Agreement or any aspect of Jordan's relationship with the Defendants.

j.      Upon receipt of the Settlement Payment, Jordan agrees, affirms, and acknowledges that he will be paid all wages and wage supplements and all other amounts owed to him, inclusive of attorneys' fees and costs, for any reason by the Defendants.

k.      Jordan will be issued a W2 and a Form 1099 and his counsel will also be issued a Form 1099. Jordan further agrees that he shall be responsible for payment of all personal taxes that may be due as a result of the Settlement Payment. Jordan understands and agrees that no representation is made by or on behalf of the Defendants regarding tax obligations or consequences that may arise from this Agreement. Further, Jordan agrees to indemnify and hold harmless the Defendants from and against all liens, liabilities, interest and penalties that may be assessed against or incurred by them as a result of not deducting taxes or other withholdings or satisfying any liens or judgments against Jordan on the Settlement Payment.

3.    **Claims Released by Jordan.**

a.    a.    In exchange for the Settlement Payment and for other good and valuable consideration, receipt Plaintiff, for himself, his heirs, executors, administrators, successors and assigns and anyone who has or obtains any legal rights or claims through him, forever waive any wage and hour claims under the Fair Labor Standards Act and New York Labor Law against Defendants, their parent(s), subsidiaries, affiliates, divisions, joint ventures and related entities and persons, their successors and assigns, and their past and present directors, officers, agents, attorneys, insurers or insurance carriers, owners, employees, and any fiduciaries of any employee benefit plan or policy of and from any and all claims that were brought under the Fair Labor Standards Act and New York Labor Law and supporting New York regulations ("Released Claims").

b.    Plaintiff represents that he is not aware of any other claims he may have against Defendants including, but not limited to, the New York State Human Rights, Title VII of the Civil Rights Act and the American with Disabilities Act.

c.    Defendants likewise knowingly and voluntarily waive, release and discharge, jointly and severally, Plaintiff of any and all claims they may have against Plaintiff.

d.    This release and waiver of claims shall not be construed to impair Jordan's right to enforce the terms of this Agreement and does not include any claim which, as a matter of law, cannot be released by private agreement. Nor does this release prohibit or bar Jordan from providing truthful testimony in any legal proceeding or from cooperating with, or making truthful disclosures to, any local, state, or federal governmental agency (for which Plaintiff will provide notice to Defendants'

3

counsel via facsimile or email within a reasonable time not exceeding seven (7) calendar days), or filing a timely charge or complaint with the EEOC, or participating in any investigation or proceeding conducted by the EEOC regarding any claim of employment discrimination. Notwithstanding the foregoing, with respect to any claim that cannot be released by private agreement, Jordan agrees to release and waive and hereby does release and waive his right (if any) to any monetary damages or other recovery as to such claims, including any claims brought on Jordan's behalf, either individually or as part of a collective action, by any governmental agency or other third party.

e.   This release and waiver of claims shall not be construed to impair Jordan's right to enforce the terms of this Agreement and does not include any claim which, as a matter of law, cannot be released by private agreement. Nor does this release prohibit or bar Jordan from providing truthful testimony in any legal proceeding or from cooperating with, or making truthful disclosures to, any local, state, or federal governmental agency, or filing a timely charge or complaint with the EEOC, or participating in any investigation or proceeding conducted by the EEOC regarding any claim of employment discrimination. Notwithstanding the foregoing, with respect to any claim that cannot be released by private agreement, Jordan agrees to release and waive and hereby does release and waive his right (if any) to any monetary damages or other recovery as to such claims, including any claims brought on Jordan's behalf, either individually or as part of a collective action, by any governmental agency or other third party.

4.   **Jordan's Representations and Warranties**.   Jordan hereby represents, warrants, acknowledges, and affirms as follows:

a.   that he has not filed or permitted anyone to file on his behalf, any complaints, charges or claims for relief against the Defendants with any local, state or federal court or administrative agency other than the instant lawsuit;

b.   that he has been paid and has received all compensation, wages, overtime payments, wage supplements, bonuses, commissions, leave, paid and unpaid, paid time off and benefits to which he may be due for any reason, except as provided in this Agreement; and

c.   that he has no known workplace injuries or occupational diseases and has been provided and/or has not been denied any leave requested under the Family and Medical Leave Act.

5.   **Default.**   Subject to a notice and cure period of ten (10) days, to be sent by Plaintiff's counsel to Defendants' counsel via e-mail at emanuel@mllaborlaw.com and facsimile at (516) 328-0082, Plaintiff reserves the right to accelerate the full remaining balance due plus 150% liquidated damages of the outstanding balance on the settlement due in the event Defendants fail to pay in accordance with this Agreement and fail to cure. By way of example only, if $30,000 is still owed when Defendants fail to pay and fail to cure, they would owe $45,000. The Defendants are only entitled to five (5) notice and cure periods over the course of this settlement agreement. Should the Defendants default a sixth time, there will

4

be no further notice and cure periods, and the outstanding balance due shall be accelerated. The same foregoing provisions apply in this event, as well. JVR, James, and Victor shall provide confessions of judgment to secure the payment obligation in this Agreement, which confessions are annexed hereto as **Schedule "C."**

6. **Mutual Non-Disparagement.** Jordan agrees that he shall not, directly or indirectly, at any time, make any statement (whether written, oral, electronic, or otherwise) or otherwise take any action that would or might reasonably be interpreted as harmful or disparaging to any of the Parties. For purposes of the preceding sentence, "disparaging" shall mean any statement or communication, whether verbal or written, that would tend to lessen the stature or standing of the Parties in the eyes of an ordinary and reasonable person in the community, but will not preclude the Parties from making good faith statements in the context of any judicial, administrative, arbitration, mediation or other legal proceeding. Defendants James and Victor, individually, likewise agree not to mutually disparage Jordan.

7. **Response to Inquiries on Employment.** If a prospective employer of Jordan contacts the Defendants seeking an employment reference, the Defendants will only provide Jordan's dates of employment and his position held with the Defendants.

8. **Breach of Agreement.** The Parties agree that the United States District Court, Eastern District of New York shall retain jurisdiction in the event of any alleged breach of this Agreement.

9. **Severability.** The provisions of this Agreement are severable. If any provision of this Agreement is held invalid, the invalidity shall not affect other provisions or application of the Agreement that can be given effect without the invalid provision or application.

10. **Non-Waiver.** No waiver of any breach of any term or provision of this Agreement shall be construed to be, or shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the Party waiving the breach. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, and permitted assigns.

11. **Headings.** The headings in this Agreement are for the convenience of the Parties and are not intended to modify the terms of the Agreement.

12. **Multiple Counterparts.** This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together shall constitute one and the same instrument. Faxed and e-mailed scanned copies shall be effective and enforceable.

13. **Representation by Counsel and Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any and all prior discussions, agreements or understandings between the Parties. The Parties agree that this Agreement was drafted jointly by the Parties, and therefore shall be construed according to its fair meaning, and not strictly for or against any of the Parties. Should any provision of the Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and the illegal or invalid part, term or provision shall be deemed not to be a part of the Agreement. This Agreement shall survive the cessation or termination of any arrangements contained herein. Any change or modification to this Agreement shall not be effective unless in writing and signed by the party to be charged with such change or modification.

5

14.     **Applicable Law.**  This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York.

15.     **Voluntary Agreement.** By signing in the space provided below, the Parties agree and affirm that:

a.      They have been advised to and have carefully read and fully understand all of the provisions of this Agreement;

b.      Jordan was given at least twenty-one (21) days to review, consider and execute this Agreement and has consulted with his attorney of choice before executing this Agreement;

c.      This Agreement is legally binding, and by signing it, Jordan understands that he is giving up certain rights, including his right to pursue any claims against the Releasees (inclusive of attorneys' fees and costs) from the beginning of time until the date of this Agreement;

d.      No promise or representation of any kind or character has been made by the Defendants or by anyone acting on their behalf to induce Jordan to enter into this Agreement, and Jordan has not been forced or pressured in any way to sign this Agreement;

e.      Through this Agreement, Jordan is releasing all of the Releasees from any and all claims that he may have (inclusive of attorneys' fees and costs) against the Releasees in exchange for the Settlement Payment described herein;

f.      The Parties knowingly and voluntarily agree to all of the terms set forth in this Agreement, and intend to be legally bound by them.

**JVR Car Wash, Inc.**

By:_____    DATE: \_\_\_\_\_/_____/_____
   **James Bianchi**
**Its: President**


_____    DATE: \_\_\_\_\_/_____/_____
**James Bianchi, individually**


_____    DATE: \_\_\_\_\_/_____/_____
**Victor Bianchi, individually**

---

_____    DATE: \_\_\_\_\_/_____/_____
**Elias de Jesus Jordan Carias**

STATE OF NEW YORK     )
                            ) ss.:
COUNTY OF  NEW YORK  )

    On the \_\_\_\_ day of _____, 2020 before me personally appeared Elias de Jesus Jordan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

                          _____
                          NOTARY PUBLIC

7

Schedule "A"

# Payment Summary

| Number of Payments | Monthly Payment | Total Principal Paid | Total Interest Paid | Total Paid |
|---|---|---|---|---|
| 55 | $1,197.80 | $55,000.00 | $10,879.26 | $65,879.26 |

# Yearly Amortization Schedule

| Payments | Yearly Total | Principal Paid | Interest Paid | Balance |
|---|---|---|---|---|
| Year 1 (1-12) | $14,373.66 | $10,347.61 | $4,026.05 | $44,652.39 |
| Year 2 (13-24) | $14,373.66 | $11,206.45 | $3,167.20 | $33,445.94 |
| Year 3 (25-36) | $14,373.66 | $12,136.58 | $2,237.07 | $21,309.36 |
| Year 4 (37-48) | $14,373.66 | $13,143.91 | $1,229.74 | $8,165.44 |
| Year 5 (49-55) | $8,384.63 | $8,165.44 | $219.19 | $0.00 |
|  | $65,879.26 | $55,000.00 | $10,879.26 |  |

If Defendants exercise their option outlined in ¶ 2(f) of the Agreement after the Court approves this Agreement the following will be owed by way of example and illustration only:

early pay off in 6 months

| early pay off amount* | Payments to date | amount owed |
|---|---|---|
| 50,000.00 | $7,186.83 | $42,813.17 |

* the above is an example of pay off in 6 months from March 2020. The employer can pay off any time between month 1 through 8 after the Court approves the Agreement as fair and reasonable in order to receive the reduced payment benefit. If the pay off is during a month other than the 6-month calculation above, the amount will be prorated accordingly.

Schedule "C"

8

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

**ELIAS DE JESUS JORDAN,**

18-cv-02439 (SJF) (ARL)

                                                    **Plaintiff,**

Affidavit of Confession of
Judgment

            -against-

**JVR CAR WASH INC., d/b/a GLEN**
**COVE CAR WASH and JAMES BIANCHI**
**and VICTOR DOE a/k/a VICTOR BIANCHI,**

                                                    **Defendants.**

----------------------------------------------------------------X

STATE OF NEW YORK        )
                          ): ss:
COUNTY OF_____ )

James Bianchi and Victor Bianchi, being duly sworn, depose and say:

1.  James Bianchi is the president of JVR Car Wash, Inc., located in Nassau County

2.  Victor Bianchi is a co-owner of JVR Car Wash, Inc., located in Nassau County.

3.  We have authority to sign on behalf of JVR Car Wash, Inc. and are duly authorized to make this affidavit of confession of judgment on our own behalf and on behalf of JVR Car Wash, Inc.

4.  We, James Bianchi and Victor Bianchi, individually, hereby confess judgment and authorize entry of judgment against ourselves and of JVR Car Wash, Inc. jointly and severally, in favor of Plaintiff for 150% of the outstanding balance of the settlement due at the time that Defendants fail to pay and fail to cure, pursuant to the terms of the Settlement Agreement and General Release (the "Settlement Agreement"), entered into and signed by Plaintiff and Defendants in the above-captioned proceeding, together with statutory costs and pursuant to 28 U.S.C. §§ 1920, 1921, 1923, and 1924; and reasonable attorneys' fees as determined by the Court incurred in entering and enforcing the judgment and interest on the judgment as provided in 28 U.S.C. § 1961.

5.  This Confession of Judgment is for a debt justly due to Plaintiff pursuant to the Settlement Agreement.

6.  The Settlement Agreement arises out of the above-captioned action, which was settled pursuant to a written agreement approved by the United States District Court, Eastern District of New York.

7.  I hereby represent our understanding that upon of JVR Car Wash Inc.'s breach of the Settlement Agreement, subject to the notice and cure period therein, Plaintiff shall have the unqualified right to cause this Confession of Judgment to be docketed and entered in this Court as a judgment against JVR Car Wash, Inc. and ourselves, jointly and severally.

9

8.  The original of this Affidavit of Confession of Judgment shall remain in the possession of Plaintiff's counsel, The Law Offices of Jacob Aronauer, and the original shall be destroyed upon completion of the payment obligations contained in the annexed Agreement and Release. Plaintiff's attorney will send an affirmation to attorney stating that Defendants have fully satisfied the conditions of the Stipulation of Settlement, that the Confession of Judgment has been destroyed.

_____
James Bianchi

Dated: _____

Sworn to before me this
    day of _____, 2020

_____
Notary Public

_____
Victor Bianchi

Dated: _____

Sworn to before me this
    day of _____, 2020

_____
Notary Public

_____,   JVR Car Wash, Inc.
By: _____
Its: _____

Dated: _____

Sworn to before me this
    day of _____, 2020

_____
Notary Public

10

# EXHIBIT C



Jacob Aronauer <jaronauer@aronauerlaw.com>

## Jordan

**Jacob Aronauer** <jaronauer@aronauerlaw.com>                    Wed, Apr 1, 2020 at 11:00 AM
To: Emanuel Kataev <Emanuel@mllaborlaw.com>
Cc: Yale Pollack <ypollack@yalepollacklaw.com>, Sian Ricketts <sricketts@aronauerlaw.com>, Robert Milman
<rob@mmmlaborlaw.com>

Do you have the time today or tomorrow to discuss your edits to the
settlement agreement?  Thank you.
[Quoted text hidden]
[Quoted text hidden]

Case 2:18-cv-02430-SJF-ARL   Document 99   Filed 04/06/20   Page 22 of 28 PageID #: 649



Jacob Aronauer <jaronauer@aronauerlaw.com>

# Jordan

**Emanuel Kataev** <Emanuel@mllaborlaw.com>     Wed, Apr 1, 2020 at 11:01 AM
To: Jacob Aronauer <jaronauer@aronauerlaw.com>
Cc: Yale Pollack <ypollack@yalepollacklaw.com>, Sian Ricketts <sricketts@aronauerlaw.com>, Robert Milman
<rob@mmmlaborlaw.com>

No. Revise and send back in redline. Thanks,

Emanuel Kataev, Esq.
Associate
Milman Labuda Law Group PLLC
Sent from my iPhone
[Quoted text hidden]



Jacob Aronauer <jaronauer@aronauerlaw.com>

---

# Jordan

**Jacob Aronauer** <jaronauer@aronauerlaw.com>          Wed, Apr 1, 2020 at 11:39 AM
To: Emanuel Kataev <Emanuel@mllaborlaw.com>
Cc: Yale Pollack <ypollack@yalepollacklaw.com>, Sian Ricketts <sricketts@aronauerlaw.com>, Robert Milman
<rob@mmmlaborlaw.com>

Emanuel,

I find it unfortunate that you refuse to talk on the phone to discuss
the settlement terms.

Annexed please find the revised settlement agreement and letter.

As you know in these types of cases, it is standard for the Defendant
to pay the Plaintiff half 1099 and half W-2 so we do not accept this
edit.   As I noted to you twice, the term sheet calls for Defendants
to sign an affidavit of confession of judgment for 1.5 times the
amount owed so please don't try to change it for the 3rd time.

As reflected in the settlement agreement and letter, we need to make a
small payment calculation because we just got an invoice from Veritext
with respect to the cancellation of the second Defendant for $250.

I also kept in the part about the fact that Defendants have not
provided us with a copy of the deposition transcript.  Its relevant
and the Court should know.  Its a joint letter and we are allowed to
give our perspective.

If we can't agree on the terms please let me know and Yale and I can
simply provide the Court with the term sheet and ask the Court to
uphold the agreement and fill in the terms. Thank you.
[Quoted text hidden]
[Quoted text hidden]

---

**2 attachments**

📄 **2020.04.01 JVR Car Wash Settlement JA Edits.doc**
114K

📄 **2020.04.01 Settlement Application Letter.docx**
90K

# EXHIBIT D

Case 2:18-cv-02430-SJF-ARL   Document 99   Filed 04/06/20   Page 25 of 28 PageID #: 652



Jacob Aronauer <jaronauer@aronauerlaw.com>

## Jordan

**Emanuel Kataev** <Emanuel@mllaborlaw.com>
Wed, Apr 1, 2020 at 12:04 PM
To: Jacob Aronauer <jaronauer@aronauerlaw.com>
Cc: Yale Pollack <ypollack@yalepollacklaw.com>, Sian Ricketts <sricketts@aronauerlaw.com>, Robert Milman
<rob@mmmlaborlaw.com>

Jacob:

It is not standard and we do not agree for Plaintiff to receive half of his settlement money as a 1099. It will be paid solely as wages.

You misrepresent reality and show what an imbecile you are by claiming that I have changed something twice when I only changed it once, and told you on March 9, 2020 that if our term sheet says something different, we will honor that amount. In that regard, stop misrepresenting reality and please speak truthfully.

With respect to expenses, that's fine, but we will be deducting the amount of the deposition transcript since you have repeatedly failed to provide us with same despite repeated demands. Send us the transcript by today or we will remove that expense. We will provide you your client's transcript upon receipt of ours.

With that said, I will review and revise both attachments now.

You cannot enforce the term sheet because it is an agreement that calls for a fully drafted settlement agreement. Defendants reserve all rights to seek sanctions, attorneys fees, and costs should you take the misguided step of pursuing such a frivolous motion when the black and white terms of the term sheet do not give you that right.

Thanks,

Emanuel Kataev, Esq.
Associate
Milman Labuda Law Group PLLC
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

This message and its attachments may contain confidential information that is legally privileged. If you are not the intended recipient, you are hereby notified that any printing, copying, forwarding, or saving of this message is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete the message and any attachment from your system.

[Quoted text hidden]

# EXHIBIT E

Case 2:18-cv-02430-SJF-ARL   Document 99   Filed 04/06/20   Page 27 of 28 PageID #: 654

# GMail
by Google

Jacob Aronauer <jaronauer@aronauerlaw.com>

## JORDAN
1 message

**Jacob Aronauer** <jaronauer@aronauerlaw.com>
To: Robert Milman <rob@mmmlaborlaw.com>

Wed, Apr 1, 2020 at 11:17 AM

Robert,

You called me up asking to resolve it and I worked with you.  You went to Yale's office and we worked with you.  But when I reach out to you I can't get a response.  Please.

Jacob Aronauer, Esq.
The Law Offices of Jacob Aronauer
225 Broadway, 3rd Floor
New York, New York 10007
(P) (212) 323-6980
(F) (212) 233-9238

107 Avenue I
Brooklyn, NY 11230
(P) (212) 323-6980

101 Hudson Street
21st Floor
Jersey City, New Jersey 07302
(P) (201) 591-1971

906 South Street
Peekskill, New York 10566
(P) (212) 323-6980

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the intended recipient(s).  Any review, use, distribution or disclosure by others is strictly prohibited.  If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

To reply to our email administrator directly, please send an email to jaronauer@aronauerlaw.com.

The Law Office of Jacob Aronauer



Jacob Aronauer <jaronauer@aronauerlaw.com>

## JORDAN

**Jacob Aronauer** <jaronauer@aronauerlaw.com>
To: Robert Milman <rob@mmmlaborlaw.com>, Yale Pollack <ypollack@yalepollacklaw.com>

Wed, Mar 25, 2020 at 8:32 AM

Robert,

Why does Emanuel make everything so hard?
[Quoted text hidden]
[Quoted text hidden]